2022 IL App (2d) 220010-U
No. 2-22-0010
Order filed August 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF <br> JARED W. HAMM, | ) <br> ) <br> ) | Appeal from the Circuit Court <br> of McHenry County. |
| Petitioner-Appellee, | ) <br> ) | |
| and | ) <br> ) | No. 21-DV-644 |
| CHELSEY K. LESNIAK, | ) <br> ) <br> ) | Honorable <br> Justin M. Hansen, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred in its award of educational expenses. Affirmed in part, vacated in part, and remanded.

¶ 2    Following the parties' dissolution-of-marriage judgment and after one of their children turned 18, petitioner, Jared W. Hamm, filed a petition for modification of child support; respondent, Chelsey K. Lesniak, subsequently filed a petition for educational expenses. The trial court granted both petitions, ordering, in relevant part, that the parties each pay half of the child's tuition at a private university after subtracting subsidized loans, grants, and scholarships from the

tuition amount. Chelsey appealed from the order awarding educational expenses. For the following reasons, we affirm in part, vacate in part, and remand the cause for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     The parties were married in 2002 and have two children (born in 2002 and 2003). A dissolution-of-marriage judgment was entered on March 22, 2011, and incorporated the parties' marital settlement agreement (MSA). In relevant part, the MSA provided:

> "COLLEGE. Husband and Wife shall provide each child with a college education if the said child attends an accredited college, university or trade school as a full-time student, even though he/she has reached the age of majority, if the child is educable and each party shall pay in accordance with the party's financial ability to provide said education and considering the financial resources of the child. The child must attend the said college, university or trade school as a full-time student within one (1) year of his or her graduation from high school, and must complete the said schooling in a normal time recommended by the said school. The child and the parties shall each communicate his or her preference for choice of school (This is not a condition of liability)."

¶ 5     On September 2, 2021, Jared filed a petition for modification of child support to terminate his child support obligation for the child who had turned 18. On September 14, 2021, Chelsey filed a petition for educational expenses pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513 (West 2020)) for the parties' emancipated child who was attending college at Lindenwood University (Lindenwood) in Missouri. The exhibits attached to the petition included Lindenwood billing ledgers and reflected that the tuition at Lindenwood for the 2020/2021 academic year was $18,000 ($9000 per semester) but the child received a total of $7000 in academic grants ($3500 per semester); the tuition at Lindenwood for the fall semester

2021 was $9270 but the child received a $3500 academic grant for the semester; and the tuition at the University of Illinois at Urbana-Champaign (UIUC) for the 2021/2022 academic year was $12,254.[1] Both parties represented themselves throughout the trial court proceedings.

¶ 6                                    A. Trial Court's Ruling

¶ 7      On October 25, 2021, following a hearing at which both parties testified regarding their respective contributions to the child's educational expenses, the trial court granted both petitions. In its oral findings, the trial court reasoned that section 513 of the Act provides that educational expenses shall not exceed that amount paid by a student at UIUC for the same academic year. "So to the extent that [the child] is going somewhere where the tuition and the room and board is higher than what U of I would be, I'm not authorized to order either party to pay that amount." Accordingly, the trial court ordered the parties to pay the tuition per semester as follows:

"Starting at $12,254, which is the amount of tuition based upon the evidence at Illinois for one semester, first from that number will be subtracted any subsidized loans that [the child] is able to qualify for. From the [$]12,254, minus the amount of subsidized loans that [the child] can qualify for, the parties will also subtract any grants, scholarships or other non-loan financial aid that she qualifies for. So I'm making numbers up, but if in total she has $3,000 in subsidized loans and a grant from the school, the remaining tuition would be [$]9,254. The parties will divide that equally between the two of them, 50 percent and 50 percent."

---

[1]The billing ledgers also reflected receipt of subsidized and unsubsidized student loans and a Parent Plus loan.

¶ 8    The trial court recognized that its order "creates a deficit right from the get-go because right from the get-go, her tuition is several thousand dollars more per semester" but stated that it did not have "the authority to order a remedy to that today." Namely, "I can't order payments of tuition above and beyond what Illinois is, so the remaining five or six thousand dollars that would be due is basically not addressed by this court order." The trial court further detailed the amount that each party was required to pay for room, board, and fees; this portion of the order is not at issue in this appeal.

¶ 9    After the trial court set forth its findings, Chelsey sought clarification as to the amount of tuition that each party was required to pay. The following colloquy ensued:

"CHELSEY: "So we're taking [the child's] total tuition at Lindenwood, subtracting out subsidized loans, grants and scholarships and then splitting the rest at 50/50 as long as it doesn't exceed the University of Illinois's cost. Or did I say that backwards?

THE COURT: We are on the same page, but I'm using the tuition number from the University of Illinois—

CHELSEY: Not her tuition, though.

THE COURT: Right. So [$]12,254, which is the U of I number, minus subsidized loans, grants and scholarships. The remainder of that figure will be split 50/50 by the parties. And the court recognizes that's going to leave a balance that you folks either need to figure out or she needs to figure out."

¶ 10   The trial court's October 25, 2021, written order on the petition for educational expenses provided in relevant part:

"Tuition. The tuition at Lindenwood University exceeds that of U of I at Urbana-Champaign ("UIUC"). Therefore, tuition payments under this order are capped at $12,254

per semester, the amount of tuition at UIUC according to the evidence presented at hearing. To determine each party's responsibility, the amount of any subsidized loans, grants, and scholarships offered to [the child] shall first be subtracted from $12,254. Petitioner and Respondent shall each pay 50% of the remaining balance. Payments shall be made directly to the University."

The trial court's order included the parties' required contributions for the child's room, board, books, and supplies, but those provisions are not at issue in this appeal. The trial court also entered separate written orders regarding the petition for modification of child support.

¶ 11                                B. Postjudgment Motions

¶ 12    On November 9, 2021, Chelsey filed a "motion nunc pro tunc regarding the petition for educational expenses and subsequent order entered on October 25, 2021." Chelsey also filed a "motion to clarify" the order on November 16, 2021. Despite their titles, the motions, in essence, challenged and sought modification of the October 25, 2021, judgment. Accordingly, on November 30, 2021, the trial court entered a briefing schedule on the motions, directed Jared to file "any motions of his own, directed at the Court's October 25, 2021, orders, within 14 days," and scheduled a hearing on the motions for December 20, 2021 (which was rescheduled to January 4, 2022).

¶ 13    On December 9, 2021, Jared filed a "motion to clarify" the October 25, 2021, order. He too sought modification of the judgment, arguing, *inter alia*, that the order provided that the tuition at UIUC was $12,254 *per semester* when, in fact, $12,254 was the tuition *per academic year*. In other words, the tuition cost *per semester* at UIUC was $6127 in the 2021/2022 academic year.

¶ 14    On December 13, 2021, Chelsey filed a "Motion to Modify Educational Expenses," which responded to Jared's motion and argued, *inter alia*, that the tuition obligations set forth in the

October 25, 2021, were nonetheless incorrect. Chelsey specified that the "annual tuition at Lindenwood University is $18,500. [The child] receives $7,000 per year in academic grants, making the total out of pocket tuition $11,500. This amount is less than University of Illinois Champagne [*sic*] Urbana annual tuition of $12,254." Chelsey maintained that the child should not be obliged to take out subsidized or unsubsidized student loans where, because of the academic grants she earned, her actual tuition at Lindenwood was less than the tuition at UIUC. Accordingly, Chelsey requested that "the annual out of pocket tuition be split between the parties in the amount of $11,500 per year" and that such a division was consistent with the intent of the parties' MSA in which the parties agreed to provide their children with a college education. Chelsey also sought retroactive relief to an unspecified date for "the purposes of reimbursing previous loans and decreasing [the child's] financial burden."

¶ 15                    C. Trial Court's Ruling on Postjudgment Motions

¶ 16    At the January 4, 2022, hearing on the motions, Chelsey withdrew her November 9, 2021, motion, stating that the arguments were duplicative of arguments raised in the parties' subsequent motions. Chelsey acknowledged the error in the October 25, 2021, order and agreed that tuition should be capped at $12,254 *per academic year*, and not *per semester* as stated in the order. Regardless, she pointed out that their child received academic grants at Lindenwood; thus her *actual* tuition at Lindenwood for the 2021/2022 academic year was $11,500—an amount *less* than the $12,254 cost of tuition at UIUC. Accordingly, Chelsey argued that the parties should each be ordered to pay half of their child's actual remaining tuition at Lindenwood.

¶ 17    In rejecting Chelsey's argument, the trial court stated that both section 513 of the Act and the MSA allowed for consideration of the child's resources before determining the parents' financial obligations. The trial court reasoned that the child's resources included academic grants,

scholarships, and the opportunity for subsidized student loans. Accordingly, the trial court concluded: "I think it's appropriate to say that in determining [the mother's] responsibility and [the father's] responsibility that first we'll take into account what [the child] has available to her in those three forms—subsidized loans, grants, and scholarships—subtract that from the UIUC amount, and then make each party 50 percent responsible for the remainder."

¶ 18    The trial court's January 4, 2002, written order provided that it had considered the parties' motions directed at its October 25, 2021, order for educational expenses and that the order was amended in part for the reasons stated on the record. With respect to the tuition award, the written order specified:

> "Tuition. The tuition at Lindenwood University exceeds that of U of I at Urbana-Champaign ("UIUC"). Therefore, tuition payments under this order are capped at $12,254 per school year. To determine each party's responsibility, the amount of any subsidized loans, grants, and scholarships offered to [the child] shall first be subtracted from $12,254. Petitioner and Respondent shall each pay 50% of the remaining balance. Payments shall be made directly to the University."

The written order further provided that its terms were effective October 25, 2021.

¶ 19    Chelsey timely appealed and continues to represent herself on appeal. Jared is represented by counsel on appeal.

¶ 20                                    II. ANALYSIS

¶ 21    Chelsey challenges the trial court's calculation of the tuition award. She argues that the trial court misinterpreted section 513 and the parties' MSA in failing to order the parties to split the *actual* cost of the Lindenwood tuition. Jared responds that the trial court did not misinterpret the statute; rather, it properly considered the child's resources, including her academic grants and

opportunity for subsidized loans, in calculating the amount of tuition that each parent is required to pay. We agree with Chelsey that the trial court misconstrued section 513, as set forth below.

¶ 22                                    A. Scope of Review

¶ 23     Initially, Jared raises myriad challenges to Chelsey's compliance with procedural rules. Namely, he argues that Chelsey: (1) forfeited her arguments by failing to provide supporting record citation and failing to develop the arguments in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020); (2) cited an unpublished order in support of her contentions; and (3) failed to provide a complete record on appeal sufficient to support her claims of error. We address each argument in turn.

¶ 24     First, we note that the rules of procedure regarding appellate briefs are not mere suggestions, and failure to comply with Rule 341(h)(7) may result in forfeiture. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. *Pro se* litigants are not excused from these requirements. *In re Marriage of Wendy S.*, 2020 IL App (1st) 191661, ¶ 15. Here, however, with one exception, we decline to hold Chelsey's arguments forfeited, as the purported rule violations are not so flagrant as to hinder our review. See *id.* The exception is Chelsey's argument that the trial court failed to order relief retroactive to the "start of the child's college career." Chelsey fails to develop any legal or factual basis for the argument or provide any meaningful citation to legal authority. The argument is forfeited.

¶ 25     Second, the unpublished order to which Chelsey cites is *Schroeder v. Schroeder*, 2021 IL App (1st) 210121-U. Chelsey appears to cite the case in support of an argument that the trial court's order fails to effectuate the parties' intent to provide their children with a college education, as set forth in the MSA. Citation to this decision was not improper. Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021) permits citation of orders entered on or after January 1, 2021, for persuasive

purposes. Moreover, the decision is ultimately inapposite given our holding that the trial court misinterpreted section 513 of the Act, as set forth below.

¶ 26    Third, Jared contends that Chelsey "provided this Court only an excerpt of the transcript from the October 25, 2021, hearing, which excerpt does not include the Court's findings" and that exhibits admitted at the hearing were not included in the record on appeal. The "appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Chelsey's status as a *pro se* litigant does not excuse her from this burden. See *Teton, Tack & Feed, LLC v. Jimenez*, 2016 IL App (1st) 150584, ¶ 19.

¶ 27    However, the record *does* in fact contain a transcript of the trial court's October 25, 2021, findings. Moreover, while the record does not include exhibits from the hearing, the record is nonetheless sufficient for us to address the merits of the appeal. The missing exhibits appear to include the parties' financial affidavits, but the central issue presented in this appeal is whether the trial court misinterpreted section 513 of the Act in calculating the tuition award. This is a question of law that we review *de novo*. See *In re Marriage of Wilhelmsen*, 2019 IL App (2d) 180898, ¶ 6. Accordingly, *Foutch* does not preclude our review here. See *National Collegiate Student Loan Trust 2007-2 v. Powell*, 2022 IL App (2d) 210191, ¶ 30 ("[N]otwithstanding *Foutch*, a record of the proceedings in the lower court may be unnecessary when an appeal raises solely a question of law, which we review *de novo*."). We turn to the merits.

¶ 28                                B. Section 513

¶ 29    Section 513(a) of the Act provides that "[t]he court may award sums of money out of the property and income of either or both parties ***, as equity may require, for the educational

expenses of any child of the parties." 750 ILCS 5/513(a) (West 2020). Educational expenses may include, *inter alia*, "except for good cause shown, the *actual* cost of the child's post-secondary expenses, including tuition and fees, provided that the cost for tuition and fees does not exceed the amount of in-state tuition and fees paid by a student at the University of Illinois at Urbana-Champaign for the same academic year." (Emphasis added.) *Id.* § 513(d)(1).

¶ 30    The statute further provides that, in fashioning an award under section 513, "the court shall consider all relevant factors that appear reasonable and necessary, including:

> (1) The present and future financial resources of both parties to meet their needs, including, but not limited to, savings for retirement.
>
> (2) The standard of living the child would have enjoyed had the marriage not been dissolved.
>
> (3) The financial resources of the child.
>
> (4) The child's academic performance." *Id.* § 513(j) (1)-(4).

¶ 31    The issue here is whether the trial court misconstrued section 513(d)(1) in calculating the amount of the parties' respective tuition obligations. The fundamental objective of statutory construction is to ascertain and give effect to the legislature's intent. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21. The best indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* Each word, clause, and sentence of a statute must be given a reasonable construction, and no term should be rendered superfluous. *Id.* A court will not depart from the plain language by reading in exceptions, limitations, or conditions not expressed therein. *Siena at Old Orchard Condominium Ass'n v. Siena at Old Orchard, LLC*, 2017 IL App (1st) 151846, ¶ 67. Statutes must be construed to avoid absurd or unjust results. *Richards v. Vaca*, 2021 IL App (2d) 210270, ¶ 11.

¶ 32    Here, the trial court awarded educational expenses in accordance with section 513. However, in calculating the parties' respective obligations, the trial court held that the amount of any subsidized loans, grants, and scholarships that the child receives at Lindenwood be deducted from the amount of UIUC tuition. This reflects a misreading of the statute. Section 513(d)(1) provides that an award of educational expenses may include the *actual* costs of the child's post-secondary expenses, including tuition. 750 ILCS 5/513(d)(1) (West 2020). But the statute caps the tuition award—it may not exceed the amount of tuition at UIUC for the same academic year. *Id.* In other words, if the child here attended a university whose annual tuition is $50,000, the trial court could not order the parties to each pay $25,000 for tuition. Rather, each party would be responsible for an amount equal to half of UIUC's $12,254 annual tuition, or $6127.

¶ 33    Here, Chelsey seeks less than this. She seeks an order that would require the parties to split the amount that their child is actually paying in tuition at Lindenwood because that amount is in fact less than $12,254. Pursuant to the plain language of section 513(d)(1), the starting point is the tuition that the child is actually paying. Then, the court should turn to the cap. *Id.* That is, the statute requires that the parties divide the child's actual cost of tuition at Lindenwood, provided that the actual cost does not exceed the cost of tuition at UIUC. Here, the trial court inverted the analysis. The trial court started with the amount of UIUC tuition and deducted from there.

¶ 34    In looking at the 2020/2021 academic year, deduction of just the academic grants for that year ($7000) from UIUC's tuition of $12,254 would yield a balance of $5,254, with each party paying $2627 for that academic year's tuition. The trial court also ordered that the amount of any potential subsidized loans also be deducted from the parties' obligations, thereby creating the potential of a zero balance. This interpretation leads to an absurd result. Despite the trial court's award of education expenses in the first instance, the parties may not be obliged to pay *any* tuition

even though the child's *actual* tuition at Lindenwood for the year was $11,000—an amount *less* than the statutory cap. Accordingly, while we affirm the trial court's award of educational expenses under the statute, we vacate that portion of the trial court's order setting forth the calculation of the parties' respective tuition obligations and remand for reconsideration of the amount of the award.

¶ 35                                III. CONCLUSION

¶ 36    For the reasons stated, we affirm in part and vacate in part the judgment of the circuit court of McHenry County and remand the cause for further proceedings consistent with this disposition.

¶ 37    Affirmed in part and vacated in part; cause remanded.